UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANIEL E. BECNEL, JR.,                    CIVIL ACTION
individually and on behalf
of all others similarly
situated

VERSUS                                    NO: 14-0003

MERCEDES-BENZ USA, LLC                    SECTION: "J" (5)

<u>**ORDER & REASONS**</u>

Before the Court is Defendant Mercedes-Benz USA, LLC ("MBUSA")'s **Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 10)**, Plaintiff Daniel E. Becnel, Jr. ("Becnel")'s opposition (Rec. Doc. 17), and MBUSA's reply memorandum. (Rec. Doc. 26) Also before the Court is MBUSA's **Motion to Strike Class Allegations (Rec. Doc. 12)**, Becnel's opposition (Rec. Doc. 18), and MBUSA's reply memorandum. (Rec. Doc. 27) Both motions were set for hearing on April 23, 2014, on the briefs. Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that the motions should be **GRANTED IN PART AND DENIED IN PART** for the reasons set forth more fully below.

<u>**FACTS AND PROCEDURAL BACKGROUND**</u>

This matter arises from Becnel's claims for negligence, strict product liability, breach of implied warranties, fraud, and violations of the Louisiana Unfair Trade Practice Act, Louisiana Revised Statute § 51:1401, *et seq* ("LUTPA"). Becnel's claims arise

from his purchase of a 2008 Mercedes-Benz GL320 from Mercedes-Benz of New Orleans ("Dealer") on February 26, 2008. (Rec. Doc. 1, p. 4, ¶ 14) On November 31, 2011, after noticing that his vehicle was leaning to one side, thereby making it unreliable and undriveable, Becnel brought the vehicle to the Dealer for service. (Rec. Doc. 1, p. 4, ¶ 15). The problem recurred, and Becnel returned the vehicle to the Dealer for service on March 5, 2012, June 28, 2012, and on August 31, 2013. ((Rec. Doc. 1, p. 5, ¶¶ 16-18) Each time that Becnel tendered the vehicle to the Dealer, the Airmatic Suspension System ("the Suspension System") was cited as the problem and was repaired. Becnel alleges that MBUSA knew that the Suspension System was defective, but concealed that fact from current, future, and past owners and/or lessors of GL model vehicles.

Based on these facts, Becnel filed a class action complaint on January 2, 2014 against MBUSA on behalf of "[a]ll current and past owners or people who leased Mercedes-Benz USA, LLC GL model of vehicles since 2007." (Rec. Doc. 1, p. 6, ¶ 22) MBUSA filed the instant motions on February 28, 2014.

## PARTIES' ARGUMENTS

In the motion to dismiss, MBUSA urges the Court to dismiss Becnel's Complaint because (1) he alleges only conclusory allegations; (2) the Louisiana Products Liability Act ("LPLA") precludes several of his claims; (3) Becnel's tort claims are prescribed; and (4) the LPLA does not permit economic damages.

2

## A. Conclusory Allegations

### 1. Allegations of a Defect

MBUSA argues that Becnel only conclusorily alleges that there is a general defect within the entire suspension "system," as opposed to identifying the specific issue or what the specific defect in the many undefined parts of the Suspension System may be. MBUSA contends that, at best, Becnel alleges the effect–that the car leans to one side–but not the defect.

Becnel asserts, however, that he has identified the defect *in the vehicle*–the Suspension System. Further, he has supplied enough facts to show that a defect plausibly exists. His allegations do no consist solely of the assertion that "there was a defect;" rather he sufficiently explained how the product deviated from the intended design and/or use. Becnel avers that any further information is in the hands of MBUSA, thus he cannot be expected to plead such facts at this time.

### 2. Causation Allegations

MBUSA next asserts that Becnel has not properly alleged that the purported injuries were caused by the alleged defect. Specifically, MBUSA argues that Becnel has not alleged how the defect caused the vehicle's tendency to lean to one side. To the contrary, Becnel contends that he clearly alleges that the lean in his vehicle is a result of the defective Suspension System, and that his allegations that the repair technician told him on four

3

occasions that the lean was caused by the Suspension System supports that allegation.

### 3. Damage Allegations

MBUSA avers that Becnel has not alleged facts demonstrating that he has suffered damages as a result of the defect. It claims that Becnel alleges that he had to have his car repaired several times, however he does not allege that he had to pay for such repairs. Further, Becnel does not allege that there was any kind of safety hazard or that there was any damage to Becnel or his vehicle due to an accident caused by the defect. Becnel, on the other hand, avers that his damages are clear because his vehicle in undriveable and that the notion that there is no injury until he has paid out-of-pocket for repairs is untenable.

### 4. Negligence, Products Liability, and Warranty Claims

MBUSA contends that Becnel's substantive claims merely recite formulaic elements, thus do not meet the pleading requirements of *Twombly* and *Iqbal*. Further, MBUSA argues that Becnel's allegation that MBUSA is a manufacturer is incorrect because MBUSA is a distributor. Becnel responds that he does satisfy *Twombly* and *Iqbal*. Further, he argues that the Supreme Court opinion on which MBUSA predicates its assertion that MBUSA is only a distributor did not arise in the context of a products liability case, this is inapposite. Becnel further claims that MBUSA should not be permitted to argue that MBUSA is not the manufacturer at the same

4

time that it advocates for the application of the LPLA.

### 5. Fraud and LUTPA Claims

MBUSA argues that Becnel's fraud and LUTPA claims must be pled with particularity, and that Becnel fails to plead the "who, what, where, and when" of the alleged fraudulent scheme. Referring to *Shelton v. Standard/700 Assocs.*, 2011-0587 (La. 10//16/01), 798 So. 2d 60, 64, MBUSA specifically argues that to state a claim for fraudulent concealment, Becnel needs to plead, with particularity, facts that establish: "(1) a misrepresentations, suppression, or omission of the truth; (2) the intent to obtain an unjust advantage, cause damage, or inconvenience to the other party; and (3) how the resulting error relates to a circumstance that influences the other party's consent." Becnel argues that the only party with the factual and technical knowledge that MBUSA seeks in the pleading is MBUSA itself, thus dismissal is not warranted.

### B. Preclusive Effect of the LPLA

MBUSA posits that the LPLA applies to the instant claims because Becnel alleges that MBUSA is the manufacturer. The LPLA, then, will provide the exclusive remedies available to the plaintiff for his claims against the manufactuer, thereby foreclosing Becnel's freestanding claims for negligence, fraudulent concealment, LUTPA, and breach of implied warranties. Becnel argues that MBUSA should not be allowed to argue that it is not the manufacturer at the same time that it advocates for the application

5

of the LPLA.

**C. Prescription**

Next, MBUSA asserts that Becnel's tort, LUTPA, and LPLA claims are prescribed on their face because Becnel first had the Suspension System repaired in November 2011, meaning that his claim prescribed in November 2012. Further, to the extent that Becnel claims that the "discovery rule" interrupted prescription because it was reasonable for Becnel to have not discovered that there was a defect in November 2011, MBUSA argues that it was not reasonable for him to overlook the possibility of a defect after his second and third time repairing the vehicle. Therefore, even if the prescriptive period commenced after the third repair in June 2012, the one-year prescriptive period ended prior to the filing of this claim in January 2014.

Becnel invokes the "discovery rule" and contends that the prescriptive period clearly did not begin running after the first malfunction in November 2011 because one problem with a vehicle is not enough to alert a party to the possibility of a potential cause of action for a defect. Further, Becnel argues that under Louisiana Civil Code Article 2534(c), the prescriptive period restarted every time he tendered the vehicle to MBUSA for repairs, thus it commenced anew in August 2013.

**D. Claims for Economic Losses**

MBUSA argues that the LPLA does not permit recovery for

6

economic losses for damage to the product itself in the circumstances of this case. La. R.S. § 9:2800.53(5); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 5217594, *18 (E.D. La. Dec. 12, 2008). Because Becnel only pleads damages for the damage to the vehicle itself, Becnel's claims should be dismissed. Becnel asserts, on the other hand, that such losses are available under La. R.S. § 9:2899.53(5) because this provision reserves the plaintiff's right to sue under a theory of redhibition.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must

accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

## **DISCUSSION**

**I. Motion to Dismiss**

**A. Prescription**

"A Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense." *Mann v. Adams Realty Co., Inc.*, 556 F.2d 288, 293 (5th Cir. 1977). "In Louisiana, the prescriptive period for delictual actions, which include actions for fraud, is one year from the date injury or damage is sustained." *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 982 F. Supp. 388, 394 (E.D. La. 1997) (Sear, J.) When the issue of prescription is raised,

> [t]he burden of proof generally rests on the party asserting prescription. However, when a Complaint reveals on its face that the prescriptive period has lapsed, the plaintiff bears the burden of establishing a suspension or interruption of the prescriptive period.

*Frank v. Shell Oil Co.*, 828 F. Supp. 2d 835, 842 (E.D. La. 2011) *on reconsideration in part*, No. 11-871, 2012 WL 1230736 (E.D. La. Apr. 12, 2012)(internal citations omitted).

The actionable events alleged in Becnel's complaint began in

November 2011, thus the claims are prescribed on their face. Therefore, Becnel bears the burden of establishing interruption of the prescriptive period. Becnel alleged in his complaint that MBUSA "is estopped from relying on the statute of limitations as a defense because [MBUSA] actively concealed the [defect]." (Rec. Doc. 1, p. 4, ¶ 20) He further claims that he and the putative class members only recently discovered the defect. (Rec. Doc. 1, pps. 12-13, ¶ 16) Based on these assertions, it appears that Becnel relies on a theory of *contra non valentem* to satisfy his burden of proving that prescription has been interrupted. Further, Becnel argues prescription was interrupted under Louisiana Civil Code Article 2534.

## 1.  Louisiana Civil Code Article 2534

Becnel maintains that, under Louisiana Civil Code Article 2534, "prescription is interrupted when the seller accepts the thing for repairs and commences anew from the day he tenders it back to the buyer." La. Civ. Code. Art. 2534. Therefore, the prescriptive period on his claims recommenced every time he had the vehicle serviced, including the last time in August 2013, so he had until August 2014 to file suit. While Becnel's argument is partially true, Article 2534 applies only to claims for redhibition and its application cannot be extended to apply to other claims. Thus, inasmuch as Becnel states a claim for redhibition *only*, Becnel's claim is not prescribed.

**2. *Contra Non Valentem***

The Louisiana Supreme Court recognizes four bases for the application of *contra non valentem*:

> (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; and (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action [...(4)] Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Corsey v. State, Through Dep't of Corr.*, 375 So. 2d 1319, 1321-22 (La. 1979)

Becnel asserts in his opposition that he relies on the fourth category,[1] thus he impliedly contends that his causes of action were not reasonably knowable to him through no fault of MBUSA. In respect to the fourth category of *contra non valentem*, the Louisiana Supreme Court cautions that it will not apply where the plaintiff's "ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned." *Corsey*, 375 So. 2d. at 1321-22.

---

[1] MBUSA makes some allegations that would invoke the third category; but Plaintiff does not advocate for that category in his opposition, and even if he did, the Court finds that there are no allegations to show that MBUSA affirmatively kept Becnel from discovering his causes of action. *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 252 (no interruption of prescription absent a showing that defendant affirmatively kept the plaintiff from investigating the situation.)

MBUSA contends that prescription may have started running after the first repair to the suspension system on November 31, 2011, but that even if it did not begin at that time, it definitely began running after the second and third time that Becnel was required to have service completed on the suspension system for an identical, recurring issue. Becnel, on the other hand, asserts that he was reasonable in relying on the service department to repair the problem, and he did not gain knowledge that this was more of a defect and less of a repair until recently.

In *Chevron*, the Fifth Circuit considered, in the context of products liability claims, "how much information is necessary to commence the prescriptive period." *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 893 (5th Cir. 2010) The Court in *Chevron* reasoned that:

> [In] *Cartwright v. Chrysler Corp.*, in which the Louisiana Supreme Court wrote:
>
>> Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription.
>
> 255 La. 597, 232 So.2d 285, 287 (1970). This rule would seemingly start prescription as soon as a potential plaintiff suspected something was wrong. But that is not the law. *Jordan v. Employee Transfer Corp.,* 509 So.2d 420, 423 (La.1987) ("The court of appeal ... paraphrased the same dicta, as if it had been the rule in *Cartwright*. It was not."). "Constructive knowledge or notice sufficient to commence the running of prescription ...

requires more than a mere apprehension something might be wrong." *Strata v. Patin,* 545 So.2d 1180, 1189 (La.App. 4th Cir.1989). But when a plaintiff suspects something is wrong, he must "seek out those whom he believes may be responsible for the specific injury." *Jordan,* 509 So.2d at 423. When a plaintiff acts reasonably to discover the cause of a problem, "the prescriptive period [does] not begin to run until [he has] a reasonable basis to pursue a claim against a specific defendant." *Id.* at 424.

*Id.* at 893-94.

Based on this standard, the *Chevron* court found that the jury reasonably rejected the argument that prescription began to run after the first failure of the product because the plaintiff reasonably thought that the failure was do to an error not attributable to the defendant distributor (specifically that another entity applied too much torque and broke the bolt at issue) and that they had remedied the issue through internal modification to procedures. *Id.* at 894. Further, it was reasonable to concluded that prescription did not run after discovering later failures because "[e]ach problem pointed to a different defendant" and because plaintiff launched an investigation to determine who was at fault and filed suit less than a year after it began its investigation." *Id.*

Here, Becnel's allegation that he only recently discovered the defect is sufficient to meet his burden at the motion to dismiss stage. This case is unlike *Global Oil Tools, Inc. v. Barnhill,* 2013 WL 5348438 (E.D. La. Feb. 16, 2006), cited by MBUSA, because that plaintiff alleged facts that contradicted his conclusory allegation

that he was unaware that he had a cause of action. Here, as was the case in *Chevron*, it may be reasonable, with more evidence, to conclude that Becnel's delay was reasonable. Therefore, the Court must deny the motion to dismiss on this issue and reserve ruling on prescription until the record is more fully developed.

**B. Are Becnel's Claims Covered by the LPLA?**

Becnel asserts claims for negligence, strict liability/design defect, strict liability/failure to warn, breach of implied warranty of merchantability, breach of implied warranty of fitness of use, fraudulent concealment, and violations of LUTPA. In his complaint, Becnel does not specifically allege whether his claims arise under LPLA or under independent causes of action for negligence, strict product liability, etc. MBUSA claims that Becnel fails to plead sufficient evidence to support the allegation that MBUSA is a manufacturer under the LPLA, which would mean that the LPLA does not apply to MBUSA. John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 LA. L. REV. 565, 571 (1989) ("The LPLA applies only to manufacturers.") MBUSA also argues, however, that the LPLA applies and preempts Becnel's other causes of action. Becnel's only response to these arguments is that MBUSA should not be permitted to advance these two contradictory arguments and that the Supreme Court opinion on which MBUSA predicates its assertion that MBUSA is only a distributor did not arise in the context of a products liability case. Thus Becnel

13

fails to provide the Court with any meaningful argument concerning the application of the LPLA to his claims.

Based on a review of Becnel's Complaint, the Court cannot determine whether MBUSA would be considered a manufacturer under the LPLA because such a determination will require further factual development of the record, thus would not be an appropriate determination to make in connection a motion to dismiss. *See Chevron USA, Inc.*, 604 F.3d at 895 (discussing the low bar for becoming a manufacturer under the LPLA and specifically noting that the Louisiana Supreme Court has found that "Mercedes-Benz's American distributor was a manufacturer because it was solely responsible for marketing the cars domestically and its name appeared on the manuals and service policies.") The fact that the defendant's status as a manufacturer is unresolved does not preclude Becnel from alleging claims under the LPLA or under non-LPLA law, rather, Becnel is entitled to plead all theories of potential recovery, even if such theories conflict. *Cusimano v. NeilMed Pharm., Inc.*, No. 12-1455, 2012 WL 5398440 *1 (E.D. La. Nov. 2, 2012)("plaintiffs are free to plead alternative, inconsistent claims of liability, including claims that would be precluded should it be established at trial or on summary judgment that [defendant] is in fact the manufacturer [...] within the meaning of the LPLA.") Therefore, the Court must consider all of Becnel's potential claims, and it does so below.

**C. LPLA Claims**

By alleging that MBUSA's product is defective and that MBUSA is the manufacturer, Becnel clearly invokes the LPLA even if he does not do so expressly. Under the LPLA, a plaintiff must plead facts in support of each element of an LPLA claim, including:

> (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and (4) that the claimant's damage[2] arose from a reasonably anticipated use of the product by the claimant or someone else.

*Scianneaux v. St. Jude Med. S.C., Inc.*, 961 F. Supp. 2d 808, 813 (E.D. La. 2013) (footnote added).

In his complaint, Becnel identifies the allegedly defective product (vehicle/suspension system) and he properly alleges that he

---

[2] Relying on *In re FEMA Trailer Formaldehyde Products Liab. Litig.*, MDL 07-1873, 2008 WL 5217594 *18 (E.D. La. Dec. 12, 2008, MBUSA claims that Becnel has not sufficiently alleged his damages, noting that damage to the product itself is not recoverable. First, the Court must note that it does not necessarily agree with the holding in that case as it appears to misapprehend La. R.S. 9:2800.53(5). *See* Kennedy, *supra*, at 580 (noting that "recovery for damage to the product itself or economic loss arising from a deficiency in or loss of use of the product will *normally not* be compensable under the LPLA, because those items of damage properly are the subject of a claim in redhibition for breach of implied warranty. If, however, a claimant cannot proceed in redhibition for some reason, he *can recover his damages in redhibition under the LPLA* (emphasis added); *In re Chinese Manufactured Drywall Products Liab. Litig.*, 680 F. Supp. 2d 780, 796 (E.D. La. 2010) ("tort damages for economic losses may be recoverable by Plaintiffs under laws unique to Louisiana.") Further, even if the law in *FEMA* is correct, MBUSA fails to mention that the Court went on to hold that "because it is presently unclear whether and to what extent redhibition would provide recovery for Plaintiffs' claims, the Court is unwilling to conclude that Plaintiffs have no remedy for economic loss damages in Louisiana. Defendants' request for dismissal is denied." *Id.* Therefore, the case that MBUSA itself cites provides that dismissal on the theory of the economic loss doctrine is inappropriate when there is a co-existing redhibition claim that may define the scope of damages available.

has been damaged because his vehicle is unable to be driven due to the defect in the suspension system that causes the vehicle to lean to one side and that his damages arose from a reasonably anticipated use of the vehicle (driving), and that MBUSA is the manufacturer of the vehicle. Therefore, Becnel has properly alleged three of the four elements of a claim under the LPLA.

As to the third and remaining element, Becnel must sufficiently allege that the vehicle was "unreasonably dangerous in one of the four ways provided in the statute," which include:

> (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
>
> (2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
>
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
>
> (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

La. Rev. Stat. Ann. § 9:2800.54. These four categories essentially correspond to claims for "manufacturing defect[s], design defect[s], inadequate labeling, and breach of express warranty." *Scianneaux*, 961 F.Supp.2d at 811. Becnel only alleges that there were design defects and/or a failure to warn/inadequate labeling.

### 1. Design Defect

The LPLA provides that:

A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:

16

(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

La. Rev. Stat. Ann. § 9:2800.56.

Here, Becnel's allegations never mention an alternative design, therefore he fails to state a claim for a design defect. *Jacobsen v. Wyeth, LLC*, No. 10-0823, 2012 WL 3575293 (E.D. La. Aug. 20, 2012)(granting defendant's motion to dismiss when the plaintiff failed to plead the " 'essential element' that there existed an available alternative design.") The Court will, however, grant Becnel leave to amend his complaint on this element.

**2. Failure to Warn**

The LPLA provides that:

A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

La. Rev. Stat. Ann. § 9:2800.57.[3] Though Becnel's allegations border on conclusory, the Court finds that the Complaint is sufficient to put MBUSA on notice of the failure to warn claim against it. Further factual support is likely inaccessible until discovery is underway; therefore, the motion will be denied as to the failure to warn claim at this time.

### D. Redhibition Claim

Even when the LPLA applies, plaintiffs still have a separate redhibition claim because such claims are not precluded by the LPLA. *Cuisimano*, 2012 WL 5398440 at *2. 8 (La.2008) ("while the LPLA is the exclusive remedy against manufacturers for damages resulting from a defective product, a manufacturer can still be liable for damages in redhibition.") Accordingly, the Court must determine if Becnel sufficiently alleges a redhibition claim. Both Becnel and Defendant confound the many elements and standards required for this claim and other warranty claims; however, after reviewing the allegations, the Court finds that Becnel does state a claim under Article 2520 for redhibition. In such suits, the plaintiff must prove: (1) the seller sold the thing to him and it is either absolutely useless for its intended purpose or its use is

---

[3]   Liability may also exist when: "A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." La. Rev. Stat. Ann. § 9:2800.57. It does not, however, appear that Becnel intends to rely on this provision.

so inconvenient or imperfect that, judged by the reasonable person standard, had he known of the defect, he would never have purchased it; (2) the thing contained a non-apparent defect at the time of sale; and (3) the seller was given an opportunity to repair the defect. Here, it is not disputed that MBUSA sold Becnel the vehicle, and he properly alleges that there was no way for him to perceive the defect, that the defect renders the car unusable, and that he returned the vehicle for service several times to no avail. Therefore, though Becnel never uses the word "redhibition," it is clear from his allegations that he intends to allege, and successfully does allege, that MBUSA is liable for a redhibitory defect in the vehicles under Louisiana Civil Code Art. 2520.

### E. Other non-LPLA Claims

If it is later determined that MBUSA is not the manufacturer under the LPLA, then Becnel's freestanding claims will not be preempted; therefore, it is necessary to determine whether Becnel's allegations are sufficient to state these claims.

#### 1. Negligence

"[T]o establish liability in a negligence case, the plaintiff must show that: (1) the defendant had a duty to conform its conduct to a specific standard; (2) the defendant's conduct failed to conform to the appropriate standard; (3) the defendant's substandard conduct was a cause of the plaintiff's injuries; and (4) the risk of harm was within the scope of the breached duty."

*Ford v. Pennzoil*, 974 F. Supp. 559, 565 (E.D. La. 1997) *aff'd,* 200 F.3d 816 (5th Cir. 1999) Becnel clearly alleges sufficient facts to state a claim for negligence, as is evidence by the prior finding that he stated a claim for failure to warn. Accordingly, the motion will be denied as to the negligence claim.

### 2. Strict Products Liability

In Counts II and III, Becnel alleges that MBUSA is strictly liable for the damages caused by its failure to warn and its defective design. If MBUSA is not found to be a manufacturer, these claims must be dismissed. "A non-manufacturing seller of a defective product is not responsible for damages in tort *absent a showing that he knew or should have known that the product sold was defective*." *Jones v. Employers Mut. Liab. Ins. Co.*, 430 So.2d 357, 359 (La. App. 2d. Cir. 1983)(emphasis added).  This is clearly a negligence standard, meaning that strict product liabilty claims do not exist for a non-manufacturing seller. *See* Kennedy, *supra*, at 573.[4] Consequently, if MBUSA is found *not* to be a manufacturer, Becnel's strict liability claims will fail as a matter of law.

### 3. Breach of Implied Warranties

In Counts IV and V, Becnel alleges that MBUSA is liable for breach of the implied warranty of merchantability because the

---

[4] A seller of a product may, in many instances, be subject to the LPLA. Kennedy, *supra*, at 573-76. However, "pure" sellers of a product, meaning those that do not fit into any category of sellers described in the LPLA, are not subject to the LPLA but rather are subject to the same standard that was applied to sellers prior to the enactment of the LPLA, which is essentially a negligence standard. Kennedy, *supra*, at 573.

vehicles MBUSA sold were not of merchantable quality and for a breach of the implied warranty of use for a particular purpose. These claims, in the sense that Becnel applies them, do not exist in Louisiana. They exist under Article 2 of the Uniform Commercial Code, but Louisiana has not adopted UCC Article 2. James W. Bowers, Incomplete Law, 62 LA. L. REV. 1229, 1277, n. 12 (2002)("Louisiana has not adopted Article 2.") Instead, the Louisiana Legislature amended its sales laws to substantially conform with Article 2. *Id.* Accordingly, the Article 2 causes of action alleged by Becnel are covered under the Civil Code's  redhibition provisions. La. Civ. Code. Arts. 2520-2532; *see also* Sidney D. Fazio, A Comparison of Redhibition in Louisiana and the Uniform Commercial Code, LA. L. REV. 165, 178 (1958). As the Court already noted above, Becnel has sufficiently alleged a redhibition claim, and the mislabeling of his claims is not grounds for dismissal. However, the Court urges Becnel to amend his complaint to reflect the proper labels for his claim.

### 4. Fraudulent Concealment

Louisiana Civil Code Art. 1953 defines fraud as:

Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.

La. Civ. Code. Art. 1953.[5] In another products liability action based on defective vehicles, the court founds that the plaintiffs' assertion that the defendant "committed fraud by concealing or suppressing the truth about the defect in its vehicles, which gave plaintiffs the misimpression that Ford's products were not defective and induced them to purchase them" stated a claim for fraud under Louisiana Civil Code article 1953. *In re Ford Motor Co. Vehicle Paint Litig.*, MDL 1063, 1996 WL 426548 (E.D. La. July 30, 1996) As the allegations in this case are substantially similar, the Court will deny the motion to dismiss on Becnel's fraud claim.

### 5. LUTPA

Louisiana's Unfair Trade Practices and Consumer Protection Law or LUTPA as it is often called, grants a private right of action for the recovery of damages to "any person who suffers any ascertainable loss ... as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405." La. R.S. 51:1409. "It has been established that this legislation is broad and does not specify particular violations." *Monroe Medical Clinic, Inc. v. Hospital Corp. of America,* 522 So.2d 1362, 1365 (La.App.2d Cir.1988). Therefore, "what constitutes an unfair trade practice is to be

---

[5] Note that though the Court found above that there were no allegations that MBUSA affirmatively kept Becnel and others from investigating the problem, it did not discuss MBUSA's silence or inaction, which is a proper basis for finding fraud in this context. Therefore, our earlier finding is more narrow than the instant discussion.

determined by the courts on a case-by-case basis." *Id.* Louisiana courts have found that in order to recover under LUTPA, the plaintiff "must prove some element of fraud, misrepresentation, deception or other unethical conduct on defendant's part." *Marshall v. Citicorp Mortgage*, Inc., 601 So.2d 669, 671 (La.App. 5th Cir.1992). "A practice is considered unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious to consumers, and consumers include business competitors." *Strahan*, 645 So.2d at 1165. Louisiana's legislature intended LUTPA to be interpreted broadly by courts.

Here, Becnel alleges that MBUSA engaged in fraudulent or deceptive conduct intended to confuse or mislead the public and advertised vehicles with the intent to not sell them as advertised. Were these facts proven to be true, such conduct could be considered "unscrupulous" or "substantially injurious to consumers;" therefore, at this time, the Court will not dismiss Becnel's LUTPA claim.

## II. Motion to Strike Class Allegations

Also before the Court is MBUSA's Motion to Strike Class Allegations. To ensure that the Court is operating under the correct and most complete set of facts, the Court will defer ruling on this motion until Becnel files an amended complaint. In the event that Becnel does not amend his Complaint, the Court will take

23

the matter under advisement after time proscribed for amendment has
elapsed.

Accordingly,

**IT IS ORDERED** that MBUSA's **Motion to Dismiss (Rec. Doc. 10)** is
**GRANTED** inasmuch as it seeks to dismiss Becnel's claims based on a
design defect.

**IT IS ORDERED** that MBUSA's **Motion to Dismiss (Rec. Doc. 10)** is
**DENIED** in all other respects.

**IT IS ORDERED** that plaintiff shall have **twenty-one (21) days**
from the entry of this order within which to amend his complaint to
remedy the defects discussed in this order.

**IT IS ORDERED** the Court will defer ruling on Defendant's
**Motion to Strike (Rec. Doc. 12)** until plaintiff files an amended
complaint. In the event that plaintiff does not amend his
Complaint, the Court will take the matter under advisement after
time proscribed for amendment has elapsed.

New Orleans, Louisiana this 13th day of May, 2014.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE