UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BECNEL                                          CIVIL ACTION

VERSUS                                          NO: 14-0003

MERCEDES-BENZ USA, LLC                          SECTION: "J" (5)

### ORDER & REASONS

Before the Court is Defendant Mercedes-Benz USA, LLC (MBUSA)'s
**Partial Rule 12(b)(6) Motion to Dismiss and Rule 12(f) Motion to
Strike (Rec. Doc. 39)**, Plaintiff Daniel E. Becnel, Jr.'s opposition
(Rec. Doc.41), and MBUSA's reply memorandum. (Rec. Doc. 46) Having
considered the motion and memoranda of counsel, the record, and the
applicable law, the Court finds that the motions should be **GRANTED
IN PART AND DENIED IN PART** for the reasons set forth more fully
below.

### FACTS AND PROCEDURAL BACKGROUND

This matter arises out of Plaintiff's purchase of an allegedly
defective 2008 Mercedes-Benz GL320.   (Rec. Doc. 1, p. 4) Plaintiff
purchased the vehicle from Mercedes-Benz of New Orleans (Dealer) on
February 26, 2008. <u>Id.</u> On November 31, 2011,[1] after noticing that

---

[1] Plaintiff's Class Action Complaint initially stated that he first brought
the car in for service on the alleged defect on November 31, 2011. However, his
First Amended and Supplemental Complaint alleges that this occurred on November
23, 2011.

1

his vehicle was leaning to one side, thereby making it unreliable and undriveable, Plaintiff brought the vehicle to the Dealer for service. (Rec. Doc. 1, p. 4). The problem recurred, and Plaintiff again brought the vehicle in for service on March 5, 2012, June 28, 2012, August 31, 2013, October 7, 2013, and on November 5, 2013. (Rec. Doc. 31, pp. 5-7) Each time Plaintiff tendered the vehicle for service, a part within the Airmatic Suspension System (Suspension System) was cited as the problem and was repaired. Id. Plaintiff alleges that MBUSA knew that the Suspension System was defective, but concealed that fact from past, current, and future owners and/or lessors of GL model vehicles.

Based on these facts, Plaintiff filed a class action complaint on January 2, 2014 against MBUSA on behalf of "[a]ll current and past owners or people who leased Mercedes-Benz USA, LLC GL model of vehicles since 2007." (Rec. Doc. 1, p. 6) Plaintiff alleged seven causes of action, which included claims for negligence, strict product liability for a design defect and failure to warn, breach of implied warranty of merchantability and fitness for a particular use, fraudulent concealment, and violations of the Louisiana Unfair Trade Practice Act, Louisiana Revised Statute § 51:1401, *et seq.* (LUTPA).[2]

---

[2] Plaintiff made no reference to the Louisiana Products Liability Act in the complaint. This Court has found, however, that he "clearly invoke[d] the LPLA even if he [did] not do so expressly" by "alleging that MBUSA's product [was]

On February 28, 2014, MBUSA filed a Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 10) and a Motion to Strike Class Allegations. (Rec. Doc. 12) In relevant part, MBUSA argued that Plaintiff's allegations were conclusory, and Plaintiff therefore failed to allege sufficient facts to state a claim for a design defect under the Louisiana Products Liability Act, Louisiana Revised Statutes § 9:2800.51 *et seq.* (LPLA). (Rec. Doc. 10, pp. 4-6) Additionally, MBUSA argued that the Court should dismiss Plaintiff's freestanding claims for negligence, breach of implied warranties, fraudulent concealment, and LUTPA violations because the LPLA preempted these other causes of action. (Rec. Doc. 10, pp. 9-11)

The Court ruled on MBUSA's Motion to Dismiss on May 13, 2014. (Rec. Doc. 30) The Court granted the Motion to Dismiss inasmuch as it sought to dismiss Becnel's claims based on a design defect, but denied it in all other respects. The Court noted that Becnel successfully pleaded an LPLA design defect claim but for his failure to "sufficiently allege that the vehicle was 'unreasonably dangerous in one of the four ways required in the statute.'" (Rec. Doc. 30, p. 16) The Court then granted Plaintiff leave to file an amended complaint to cure this defect. The Court declined to dismiss Plaintiff's freestanding claims for negligence, breach of

---

defective and that MBUSA [was] the manufacturer." (Rec. Doc. 30, p. 15)

implied warranties, fraudulent concealment, and LUTPA violations, finding that Plaintiff was entitled to allege "all theories of potential recovery, even if such theories conflict." Id. at 14. Although the Court initially deferred ruling on MBUSA's Motion to Strike Class Allegations, the Court subsequently issued an order granting the motion. (Rec. Doc. 36)

Plaintiff filed his amended complaint on May 23, 2014. (Rec. Doc. 31) In it, Plaintiff realleged[3] claims for negligence, design defect and failure to warn under the LPLA, redhibition, fraudulent concealment, violations of LUTPA, and strict products liability. In accordance with the Court's order (Rec. Doc. 30, p. 17), Plaintiff supplemented his LPLA design defect claim by including allegations of an alternative design for the product that would have prevented his damage. (Rec. Doc. 31, pp. 16-17) Additionally, Plaintiff added new claims under LPLA based on dangerous construction or composition (LPLA manufacturing claim) and the product's failure to conform to an express warranty (LPLA express warranty claim). Plaintiff further supplemented his complaint by including a claim for breach of a written or implied warranty in violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (MMWA).

---

[3] Because the Court interprets the initial complaint as stating claims for redhibition as well as design defect and failure to warn claims under the LPLA, Plaintiff "realleged" those claims in the amended complaint although it was the first time Plaintiff explicitly styled his claims as such.

On June 27, 2014, MBUSA filed the instant Partial Rule 12(b)(6) Motion to Dismiss and Rule 12(F) Motion to Strike. (Rec. Doc. 39) MBUSA urges the Court to dismiss Plaintiff's (1) LPLA design defect claim; (2) LPLA manufacturing claim; (3) LPLA breach of warranty claim; (4) MMWA claim; and (5) independent strict liability claim. Alternatively, MBUSA asks the Court to strike the claims Plaintiff added to his first amended complaint without leave from the Court, namely, the LPLA manufacturing and breach of warranty claims, as well as the MMWA claim. Plaintiff opposed the motion on July 22, 2014. (Rec. Doc. 41) MBUSA filed its reply on July 30, 2014. (Rec. Doc. 46)

## LEGAL STANDARD

### A. Motion to Dismiss

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

**B. Motion to Strike**

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The decision to grant or deny a motion to strike lies within the sound discretion of the trial court. <u>Tarver v. Foret</u>, No. 95-1192, 1996 WL 3536, at *1 (E.D. La. Jan. 3, 1996). However, motions to strike under Rule 12(f) are disfavored and "should be used sparingly by the courts" because they are considered a "drastic remedy to be resorted to only when required for the purposes of justice." <u>Pan-Am. Life Ins. Co. v. Gill</u>, No. 89-5371, 1990 WL 58133, at *2 (E.D. La. Apr. 27, 1990) (internal quotations omitted). Additionally, the moving party must generally make a

showing of prejudice before a motion to strike is granted. <u>Id.</u>

## DISCUSSION

**A. Motion to Dismiss**

**1. LPLA Design Defect**

MBUSA argues that the Court should dismiss Plaintiff's LPLA design defect claim because Plaintiff again fails to allege facts sufficient to meet the requirements of such a claim. (Rec. Doc. 39-1, pp. 3-4) Although Plaintiff amended his complaint to allege the existence of an alternative design, Plaintiff failed to allege facts showing that "[t]he likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." <u>See</u> <u>id.</u> (quoting LA. REV. STAT. ANN. § 9:2800.56). Therefore, MBUSA argues the Court should dismiss the claim.

By contrast, Plaintiff argues that he cured the deficiencies in his first complaint by alleging the existence of an alternative design, "the one that the Defendant previously used in the vehicles prior to changing to the Airmatic System." (Rec. Doc. 41, p. 4) Plaintiff further states that "[i]t is inherent that if a system already existed and was in use, then it would not be burdensome on the Defendants to use that system and the risk that a person's car

7

would not suddenly and without warning lean substantially to one side exceeds whatever burden may exist[]." Id. To the extent that these statements do not satisfy the elements of a LPLA design defect claim, Plaintiff contends that the standard should be relaxed until discovery is conducted because at this stage the necessary factual information is in MBUSA's possession.

To state a claim under the LPLA, a plaintiff must plead facts in support of each of the following elements of an LPLA claim:

> (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

Scianneaux v. St. Jude Med. S.C., Inc., 961 F. Supp. 2d 808, 813 (E.D. La. 2013). A product is considered "unreasonably dangerous" in satisfaction of the third element when a plaintiff shows that it suffers from a "manufacturing defect, design defect, inadequate labeling, [or when there has been a] breach of express warranty." (Rec. Doc. 30, p. 16)(citing Scianneaux, 961 F. Supp. 2d at 811) The Court previously held that Becnel satisfied all but the third element of an LPLA claim. (Rec. Doc. 30, p. 16) Thus, the issue before the Court is whether Plaintiff's amended complaint sufficiently alleges that a design defect rendered his vehicle

"unreasonably dangerous."

The LPLA provides that "[a] product is unreasonably dangerous in design if, at the time the product left its manufacturer's control":

> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

La. Rev. Stat. Ann. § 9:2800.56. Here, Plaintiff alleged, "[a]s the GL class were the first vehicles to use the Airmatic Air Suspension System, an alternative design was available to Defendant that had been used . . . reliably in the past, namely the suspension system the Airmatic replaced." (Rec. Doc. 31, p. 16)

The Court finds that Plaintiff has alleged sufficient facts in support of his LPLA design defect claim to survive the instant motion to dismiss. Plaintiff cured the defect from his initial complaint by adding allegations regarding an alternative design. (Rec. Doc. 30, p. 17; Rec. Doc. 31, p. 16) Plaintiff does not merely state in a conclusory fashion that an alternative exists; rather, he identifies that alternative design as the system the Airmatic replaced. (Rec. Doc. 31, p. 16) The Court acknowledges

that Plaintiff has not alleged in detail "that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." <u>See</u> La. Rev. Stat. Ann. § 9:2800.56. However, the Court will not require such specificity at this stage in the litigation, when Plaintiff has not yet had the benefit of discovery.

### 2. LPLA Manufacturing

MBUSA argues that Plaintiff's LPLA manufacturing claim merely parrots the language of the statute while simultaneously failing to mention the elements of such a claim as specified in the statute. (Rec. Doc. 39-1, pp. 5-6) Plaintiff alleges that the Suspension System is "unreasonably dangerous" in construction or composition. <u>Id.</u> Plaintiff does not, however, explain how that is so; that is, Plaintiff does not describe the mistake in the manufacturing process that renders the product dangerous in construction or composition. <u>Id.</u> MBUSA argues that Plaintiff does not even identify which of the Suspension System components is defective and, further, fails to explain how such component deviates from MBUSA's specifications.

Plaintiff counter argues that he has alleged a LPLA manufacturing claim with as much specificity as possible at this

stage of the litigation. Plaintiff has "identified all components that have failed," but cannot explain how the failure occurred because he lacks the knowledge and expertise. (Rec. Doc. 41, pp. 5-6) Plaintiff maintains that information regarding the "exact mistake that was made in the manufacturing process . . . is possessed by the Defendant alone and cannot be known by Plaintiff [until] discovery is conducted." <u>Id.</u> at 5. Finally, Plaintiff alludes to the factual allegations in his amended complaint describing how the vehicle suffers a "significant lean," which clearly was not the intended outcome. <u>Id.</u> at 6. Plaintiff argues such allegations reveal the requisite deviation from the performance standard. <u>Id.</u>

The Court finds that Plaintiff has failed to make out a claim for a manufacturing defect under the LPLA. The LPLA provides that "[a] product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. Rev. Stat. Ann. § 9:2800.55. Here, Plaintiff does not allege that his vehicle deviated in a material way from otherwise identical products; Plaintiff initially styled the suit as a class action to recover damages suffered by

purchasers of the GL class SUV Mercedes-Benz vehicle as a result of the defective Suspension System included in *all* such vehicles. (Rec. Doc. 31, p. 1) Instead, Plaintiff alleges that the product deviates from MBUSA's specifications or standards because the vehicle drives on a lean when it is not supposed to. But Plaintiff does not show how a mistake in the manufacturing process resulted in a defective Suspension System that deviates from MBUSA's specifications or standards. Plaintiff therefore fails to state a LPLA manufacturing claim. See <u>Kennedy v. Pfizer</u>, 2013 WL 4590331, at *2-3 (W.D. La. Aug. 28, 2013)(granting defendant's motion to dismiss where plaintiff failed to allege how the drug varied from defendant's standards).

### 3. LPLA Breach of Warranty

MBUSA stresses that Plaintiff has failed to specifically allege the existence of any warranty. (Rec. Doc. 39-1, pp. 6-9) Again, Plaintiff merely parrots the language of the statute without including factual allegations regarding the warranty and how MBUSA breached that warranty. <u>Id.</u> at 6. Plaintiff's breach of warranty claim cannot survive a motion to dismiss without including more than general references to MBUSA warranties; Plaintiff must specify the warranty in question. <u>Id.</u> at 7. To the extent that Plaintiff relies upon the Mercedes-Benz 4-year/50,000 mile New Vehicle Limited Warranty (NVLW) to support his claim, the claim must fail

because the NVLW does not warrant against defects. Id. at 7-8. Rather, it specifically anticipates that the vehicle could contain defects and states that Mercedes-Benz will conduct repairs as necessary during the term of the NVLW to address any such defects.[4] Id. at 8. Finally, Plaintiff cannot rely on statements contained in Mercedes-Benz advertising or websites because those statements are puffery, "general praise," or "general opinion," which do not constitute express warranties under the LPLA. Id. at 8-9.

Plaintiff argues that MBUSA relies on California cases in attempting to show that the statements in question do not constitute express warranties under the LPLA. (Rec. Doc. 41, pp. 6-7) Under Louisiana law, according to Plaintiff, a representation or promise about a product or its nature is an express warranty, the breach of which gives rise to liability under the LPLA. Id. at 7. Plaintiff therefore claims that the representation from Mercedes-Benz U.S. International, Inc.'s website asserting that their "process contributes to quality manufacturing of [their] products in ways that are safe, efficient, and predictable" amounts to an

_____

[4]In relevant part, the NVLW reads as follows: "DEFECTS: Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes-Benz truck that any authorized Mercedes-Benz Truck Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period." (Rec. Doc. 39-2, p. 2) The NVLW goes on to instruct owners to bring their vehicle to "[a]ny authorized Mercedes-Benz Truck Center" for warranty repairs or replacements. Id.

express warranty under the LPLA.[5] Id. Here, by producing and tendering to Plaintiff a vehicle with a defective Suspension System, MBUSA breached this warranty. (Rec. Doc. 31)

The Court finds that the statement identified by Plaintiff is of the sort of puffery, general praise, or opinion that does not constitute an express warranty under the LPLA. See Scott v. Am. Olean Tile Co., Inc., 97-1080, p. 8 (La. App. 3 Cir. 2/4/98); 706 So. 2d 1091, 1095. Plaintiff bases his LPLA breach of warranty claim on the statement from Mercedes-Benz U.S. International, Inc.'s website to the effect that their "process contributes to quality manufacturing of [their] products in ways that are safe, efficient, and predictable." (Rec. Doc. 41, p. 7) Importantly, Plaintiff does not argue that the NVLW constitutes a warranty for the purposes of his LPLA claim. Stating that a process "contributes" to manufacturing products that are "safe, efficient, and predictable" does not guarantee that those products will be safe, efficient, and predictable. See id. Such statement is too broad and nonspecific to constitute an express warranty. Plaintiff has failed to state a claim for breach of warranty under the LPLA. Thus, the Court will grant MBUSA's motion to dismiss insofar as it applies to this claim.

---

[5] MBUSA points out that another entity made this statement. Moreover, the statement amounts to general praise or opinion not actionable under the LPLA. (Rec. Doc. 44-2, p. 5)

## 4. MMWA[6]

MBUSA argues that Plaintiff's MMWA claim must be dismissed because Plaintiff failed to meet two requirements for a claim under the MMWA. (Rec. Doc. 39-1, p. 9) First, Plaintiff again failed to identify any applicable warranty. Id. at 9-12. Plaintiff's bare statement that "Defendant's express warranties are written warranties within the meaning of the [MMWA]" is conclusory and insufficient to survive a motion to dismiss. Id. at 10. If Plaintiff intends to base his claim on the NVLW,[7] Plaintiff's claim fails because he cannot show that MBUSA breached that warranty. Id. at 11-12. Other statements referenced by Plaintiff are mere puffery and insufficient to support a breach of warranty claim under the MMWA. Id. at 10-11. Moreover, with the exception of the NVLW, the alleged warranties do not identify a specified period of time as required under the MMWA. Second, Plaintiff failed to provide MBUSA with an opportunity to cure the alleged defect before filing suit.

---

[6] Plaintiff's MMWA claim is not based on the same allegations as its LPLA or state-law breach of warranty claim-the LPLA claim is based on statements provided on Mercedes-Benz U.S. International, Inc.'s website, whereas the MMWA claim is based on the NVLW. Consequently, the dismissal of Plaintiff's LPLA state-law breach of warranty claim does not necessitate the dismissal of Plaintiff's MMWA claim. See, e.g., Selby v. Goodman Mfg. Co., LP, No. 2:13-CV-2162-RDP, slip op. at 4 (N.D. Ala. June 17, 2014); McCabe v. Daimler AG, 948 F. Supp. 2d 1347, 1364 (N.D. Ga. 2013).

[7] Plaintiff does not explicitly reference the NVLW in either complaint, nor does he attach it to the pleadings. MBUSA included a reference to the NVLW and attached a copy of the warranty to its motion for the sake of its argument. (Rec. Doc. 39-2)

Id. at 12-13. Plaintiff cannot avoid this requirement by arguing that any such attempt would have been futile because MBUSA knew of the defect at the time of sale. Id. at 13. Further, Plaintiff did not fulfill this requirement by bringing the vehicle in for service at a Mercedes-Benz Truck Center; Plaintiff was required to bring the vehicle to MBUSA for an opportunity to cure. (Rec. Doc. 44-2, pp. 5-6)

Plaintiff argues that both MBUSA's advertising and the NVLW include representations that constitute express warranties under the MMWA. (Rec. Doc. 41, pp. 7-8) Plaintiff stresses that the NVLW is written and specifies a time period as required by the MMWA. Id. at 8. Because MBUSA attached the NVLW to its motion, Plaintiff argues this Court should consider it as part of the complaint. MBUSA breached this express warranty by failing to correct the defect in the Suspension System, which continued to malfunction for years after the repairs were undertaken within the warranty period. Finally, Plaintiff states in his amended complaint that he was not required to give MBUSA an opportunity to cure because it would be futile in this case. (Rec. Doc. 31, p. 28) In his opposition, however, Plaintiff argues that he gave MBUSA an opportunity to cure the defect when he brought the car in for service. (Rec. Doc. 41, p. 9)

"[T]he MMWA creates a statutory cause of action for consumers

16

damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation [included in] a written warranty."[8] <u>Walton v. Rose Mobile Homes LLC</u>, 298 F.3d 470, 474 (5th Cir. 2002)(citing 15 U.S.C. § 2310(d)(1)). The MMWA defines "written warranty" as

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.

§ 2301(6)(A). Additionally, "[b]efore bringing a suit for breach of warranty, the consumer must give [the obligor] under the warranty a reasonable opportunity to 'cure' their failure to comply with the obligations at issue." <u>Walton</u>, 298 F.3d at 474.

The Court finds that the NVLW is an express warranty that could give rise to a cognizable claim under the MMWA.[9] Although MBUSA argues that it fully complied with the warranty when a

---

[8] The MMWA similarly creates a cause of action for consumers damaged by breach of an *implied* warranty, 15 U.S.C. § 2310(d)(1), but leaves the definition of what constitutes an implied warranty to state law. <u>Id.</u> § 2301(7). Plaintiff, however, does not actually identify an implied warranty the breach of which could give rise to a claim under the MMWA. Plaintiff merely states, "[t]he Defective Vehicles implied warranties are covered under 15 U.S.C. § 2301(7)." (Rec. Doc. 31, p. 27) Plaintiff also does not assert that the breach of an implied warranty supports his MMWA claim in his reply.

[9] The Court will consider the NVLW despite Plaintiff's failure to include it in its pleadings. "The district court may consider 'an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document.'" <u>Brock v. Baskin-Robbins USA Co.</u>, 113 F. Supp. 2d 1078, 1092 (E.D. Tex. 2000)(quoting <u>Steinhardt Group Inc. v. Citicorp</u>, 126 F.3d 144, 145 (3d Cir. 1997)).

Mercedes service station conducted the November 2011 repairs to the vehicle, the Court finds that there is a question of fact as to whether the defect in the Suspension System was in fact corrected at that time. At this stage in the litigation, the Court must accept as true Plaintiff's well-pleaded facts. Here, Plaintiff asserts that he had to bring his car in for service to the Suspension System five times after the initial repair. Therefore, it is possible that MBUSA breached the NVLW.[10] Finally, the Court finds that Plaintiff allowed MBUSA the requisite opportunity to cure the defect when Plaintiff brought the vehicle into a Mercedes-Benz Truck Center per MBUSA's instructions in the NVLW. See Taliaferro v. Samsung Telecomms. Am., LLC, No. 3:11-CV-1119-D, 2012 WL 169704, at *2-3 (N.D. Tex. Jan. 19, 2012)(suggesting that plaintiff failed to provide manufacturer an opportunity to cure because plaintiff did not bring his phone to an "authorized phone service facility" as the warranty instructed); (Rec. Doc. 39-2, p. 2). The Court therefore denies MBUSA's motion to dismiss the MMWA claim.

---

[10] MBUSA argues that this cannot be the case because Plaintiff does not state that the particular part of the Suspension System that was replaced in November 2011 required service again. (Rec. Doc. 44-2, pp. 7-8) But Plaintiff alleges that the Suspension System is defective. Thus, there is a question as to whether MBUSA failed to correct the defect in November 2011 because Plaintiff had to have the Suspension System serviced many times after that initial visit.

## 5. Independent Strict Liability

MBUSA argues that Plaintiff's independent strict liability claims should be dismissed because they fail as a matter of law. (Rec. Doc. 39-1, pp. 14-15) Defendant notes that if MBUSA is found to be a manufacturer, then the LPLA will preempt any freestanding claims. (Rec. Doc. 39-1, p. 14)(citing Scianneaux v. St. Jude Med. S.C., Inc., 961 F. Supp. 2d 808, 811 (E.D. La. 2013)("The [LPLA] provides the exclusive remedy against a manufacturer for damages caused by its product.")). Additionally, if MBUSA is found to be a non-manufacturer seller, then MBUSA "is not responsible for damages in tort absent a showing that he knew or should have known that the product sold was defective." Id. at 15 (citing Jones v. Employers Mut. Liab. Ins. Co., 430 So. 2d 357, 359 (La. App. 2d. Cir. 1983)). Plaintiff chose not to oppose these arguments.

The Court agrees that Plaintiff's independent strict liability claims fail as a matter of law for the reasons stated in MBUSA's motion (Rec. Doc. 39-1, pp. 14-15) and reply (Rec. Doc. 44-2, p. 8). Although the Court previously found that Plaintiff is "entitled to plead all theories of potential recovery, even if such theories conflict," (Rec. Doc. 30, p. 14) the strict liability claims are different from Plaintiff's other alternative, non-LPLA claims. Those claims will survive if MBUSA is found to be a non-manufacturer seller. The independent strict liability claims,

however, fail whether MBUSA is a manufacturer or a non-manufacturer seller. Plaintiff therefore cannot assert any facts that would entitle him to relief under an independent strict liability claim. Thus, the Court will grant MBUSA's motion to dismiss the independent strict liability claims.

**B. Motion to Strike**

Also before the Court is MBUSA's 12(f) Motion to Strike. (Rec. Doc. 39) Because the striking of a claim under Federal Rule of Civil Procedure 12(f) is a "drastic remedy" that is "disfavored," courts generally require a showing of prejudice to the moving party. Here, MBUSA has not shown how permitting Plaintiff to make the additional claims contained in the amended complaint will result in prejudice. The Court therefore declines to strike Plaintiff's LPLA manufacturing and breach of warranty claims or MMWA claim.

Accordingly,

**IT IS HEREBY ORDERED** that MBUSA's **Partial Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 39)** is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** with respect to Plaintiff's LPLA breach of warranty claim, LPLA manufacturing claim, and independent strict liability claims, but **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that MBUSA's **Rule 12(F) Motion to Strike**

**(Rec. Doc. 39)** is **DENIED**.

New Orleans, Louisiana this 10th day of September, 2014.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE